**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BRENDA L. SLOCUM, ) | CASE NO:   5:08-cv-1281 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff, Brenda L. Slocum ("Slocum"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Slocum's applications for a period of Disability Insurance Benefits ("DIB") under Title II Of the Social Security Act, 42 U.S.C. § 416 (i), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I.  Procedural History**

Slocum filed her applications for DIB and SSI on July 8, 2004, alleging disability as of June 2, 2004 due to epilepsy, diabetes, and dizzy spells.  Her applications were denied initially and upon reconsideration.  Slocum timely requested an administrative hearing.

Administrative Law Judge Cheryl M. Rini ("ALJ") held a hearing on March 1, 2007, at which Slocum represented by counsel, and Bruce Holderead, vocational expert ("VE") testified.  The ALJ issued a decision on November 2, 2007 in which she determined that Slocum is not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Slocum filed an appeal to this Court.

On appeal, Slocum claims that: (1) The ALJ failed to give proper weight to the opinion of Slocum's treating social worker; (2) The ALJ failed to give proper weight to the opinion of Slocum's treating physician; and (3) The Appeals Council failed to consider new and material evidence submitted by Slocum.  The Commissioner disputes Slocum's claims.

**II.  Evidence**

*A.  Personal and Vocational Evidence*

Slocum was born on November 19, 1961, and was 45 years old at the time of her hearing.  Transcript p. 430 ("Tr." 430)  Slocum graduated from high school.  (Tr. 431) Slocum worked as a store clerk for Goodwill from January 1995 to January 1999; as a cashier at Dollar General from 1999 to May 2004; and as a store clerk at Mac Convenience Store from May 2004 to June 2004.  (Tr. 78, 97)

*B.     Medical Evidence*

*1. Seizure Disorder*

Slocum began having seizures when she was six months old, and continued to have them until she was seven years old. (Tr. 107) When she was 17 years old, Slocum's seizures started again. (Tr.107) Slocum has seizures approximately once a month around the time of her menstrual cycle. (Tr. 107) Slocum's sister reported that during her monthly seizures Slocum's body shakes, her arms jerk, her legs will not support her, and she gets weak, drops objects, loses her balance, has headaches, is very emotional and is depressed. These seizures may last anywhere from a couple of hours to a day. (Tr. 109) After the seizure, Slocum is tired and her arms are sore from jerking (Tr. 107, 109)

Slocum treats with Dr. Alok Bhagat for her seizures. Slocum saw Dr. Bhagat six times between February 4, 2004 and October 30, 2006. (Tr. 204-208, 328) During three of these visits, ( February 4, 2004, August 9, 2004, October 30, 2004) Dr. Bhagat reported that Slocum's seizures were under excellent control. (Tr. 206, 208, 328)

On October 8, 2004, Dr. Robert Norris completed a physical residual functional capacity assessment. In it he opined that Slocum should never climb ladders, ropes or scaffolds, and should avoid even moderate exposure to hazards. (Tr. 167-174)

On March 2, 2005, Dr. Aususto Pangalangan performed a physical residual functional capacity report in which he opined that plaintiff should never climb ladders, ropes, or scaffolds, and should avoid all exposure to hazards. (Tr. 194-201)

On November 14, 2006, Slocum presented to the Union Hospital emergency room where she was diagnosed with a grand mal seizure. (Tr. 372)

3

On March 6, 2007, Dr. Bhagat reported that Slocum's seizures were under excellent control. (Tr. 371)

### 2. Tarsal Tunnel Syndrome

On January 21, 2006, Slocum had an MRI due to numbness in her left ankle and foot. The MRI results suggested that Slocum had tarsal tunnel syndrome. (Tr. 251) Slocum went to physical therapy in May 2006. (Tr. 262, 264-266) On June 2, 2006, Slocum underwent tarsal tunnel release surgery. (Tr. 307) Dr. Jon Oliverio performed the surgery. (Tr. 307)

On April 3, 2007, Dr. Oliverio completed a residual functional capacity questionnaire in which he opined that Slocum could: walk half a city block; sit for more than two hours; stand for 15 minutes; sit/stand/walk/ for less than two hours; frequently lift less than 10 pounds and occasionally lift 10 pounds; stoop for one hundred percent of an eight hour day, but never crouch. He further opined that she is likely to miss work about four times per month due to her impairments; that she would have to rest for 15 to 30 minutes four to six times during an eight hour day, and that this would occur at unpredictable intervals. (Tr. 374-376)

### 3. Mental Disorders

On October 7, 2004, Dr. Robert Gaffey, Ph. D. completed a psychiatric review technique. (Tr. 153-166) In it he opined that Slocum's impairments were not severe; she had adjustment disorder with depressed mood; she had mild restrictions of activities of daily living; mild difficulties maintaining social functioning; and mild difficulties maintaining concentration, persistence, and pace. (Tr. 165, 163) Dr. Gaffey further opined that Slocum's credibility was questionable. (Tr. 165)

4

A January 5, 2005 letter from Marcia Lukens, MA/LSW and Dr. F.J. Carino indicates that Slocum has treated at Community Mental Healthcare periodically since 1993. She originally presented for depression, but did not follow through with treatment so her case was closed. Her case was reopened in October 2004, when she presented with: depression, medical problems, losing her job due to medical problems, and having to give up independent living. Her diagnosis as of January 5, 2005 was depressive disorder NOS. (Tr. 175)

On March 1, 2005, Dr. John S. Waddell completed a mental residual functional capacity assessment. In it he opined that Slocum was not significantly limited in her ability for sustained concentration and persistence with the exception of moderate limitations in her ability to: maintain attention and concentration for extended periods; complete a normal workday or workweek without interruption from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. She was not significantly limited in her social interactions or her adaptations. (Tr. 176-178)

Slocum treated with Lukens several times between March 7, 2006 and January 12, 2007. (Tr. 320, 321, 326, 327, 360, 361) Lukens' treatment notes indicate the following regarding Slocum's condition: March 7, 2006, mildly sad (Tr. 327); May 1, 2006, medication working well, symptoms decreased (Tr. 326); August 22, 2006, cheerful but anxious (Tr. 321); September 19, 2006, cheerful and relaxed (Tr. 320); December 18, 2006, better, less depressed (Tr. 361); January 12, 2007, cheerful, pressured speech. (Tr. 360)

5

On February 6, 2007, Marcia Lukens, MA/LSW completed a medical source statement concerning the nature and severity of an individual's mental impairment in which she made the following findings: Slocum is mildly limited in her ability to: (1) understand and remember very short simple instructions; (2) carry out short and simple instructions; (3) make simple work- related decisions; and (4) maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. Slocum is moderately limited in her ability to: (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (6) sustain ordinary routine without special supervision; (7) work in coordination with, or proximity to, others without being unduly distracted by them; (8) complete a normal workday or workweek without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number of rest periods; (9) interact appropriately with the general public; (10) ask simple questions and request assistance; (11) accept instruction and respond appropriately to criticism from supervisors; (12) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (13) respond appropriately to changes in work setting; and (14) be aware of normal hazards and take appropriate precautions.

In addition, Lukens found that Slocum was markedly impaired in her ability to: (1) travel to unfamiliar places and use public transportation; and (2) set realistic goals or make plans independently of others. Lukens also opined that Slocum has a substantial loss in the ability to: (1) make judgments that are commensurate with functions of unskilled work;

6

(2) respond appropriately to supervision, coworkers, and unusual work situations; and (3) deal with changes in a routine work setting. (Tr. 362-364)

On February 7, 2007, Dr. Fitzgerald completed a psychiatric review technique in which he opined that Slocum suffered from depressive syndrome. (Tr. 368)

An undated BDD Psychological Consultation Report was completed by Dr. Ryan L. Dunn, Ph.D. (Tr. 149-152) Dr. Dunn diagnosed Slocum with adjustment disorder with depressed mood and assigned a functional Global Assessment Functioning ("GAF") score 65, and an overall GAF score of 62.[1] (Tr. 152) Regarding the four work-related mental abilities, Dr. Dunn opined the following: Slocum's mental ability to relate to others, including fellow workers and supervisors, showed no significant limitations; her mental ability to understand, remember, and follow instructions showed no significant limitations; her mental ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks showed no significant limitation; her mental ability to withstand stress and pressures associated with day-to-day work activity showed no significant limitation. (Tr. 152)

On December 3, 2007, nine months after the hearing, and one month after the ALJ issued her opinion, Lukens completed another mental assessment which Slocum submitted to the appeals council. In this assessment Lukens opined that Slocum was

---

[1] A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

moderately limited in seven of 20 work-related mental activities and markedly limited in 13 of 20 work-related mental activities. (Tr. 388-389)

*C.     Hearing testimony*

At the hearing, Slocum testified as follows. She has a high school education. (Tr. 431) She had past work experience as a cashier and store clerk. (Tr. 431-435) She suffers from grand mal and petit mal seizures. (Tr. 431-436) She has only had one grand mal seizure since June 2004. (Tr. 448) Slocum testified that she has petit mal seizures monthly, and that they coincide with her menstrual cycle. (Tr. 436, 448) During a petit mal seizure, Slocum's arms jerk, and sometimes her legs are unstable. She gets dizzy and has a fuzzy sensation in her head. The seizures usually last a half a day to a day. (Tr. 457) She takes several medications for her seizures, and suffers no side effects from the medication. (Tr. 436-441, 459) She testified that she has previously been absent from work once or twice a month due to her seizures. (Tr. 452-453)

Slocum testified that she is able to walk, although she sometimes has pain in her knees, and a burning sensation in her legs. (Tr. 450-451) She testified that she can walk one half mile. (Tr. 454) She has no difficulty sitting, and she can stand for approximately 30 to 45 minutes. (Tr. 455) She does her own cooking, cleaning, and laundry. (Tr. 454) She does crafts during the day, and occasionally reads or watches television. (Tr. 456) She does not have a driver's license. (Tr. 453)

Slocum testified that she receives counseling and medication for depression at Community Mental Healthcare where she treats with Marcia Lukens and Dr. Fitzgerald. She sees Lukens every two weeks for counseling, and believes the medication has

helped her. (Tr. 449-450)

The VE also testified at the hearing. The ALJ presented the following hypothetical to the VE: A younger individual with a high school education; with no exertional limitation, but who cannot climb ladders, ropes, or scaffolds; should avoid unprotected heights or hazards; should not drive for work; can only understand and carry out simple instructions; perform routine and repetitive tasks; and perform only low stress work meaning no high production or rapid production quotas. (Tr. 464-465) The ALJ then asked the VE whether there were any jobs that such an individual could perform. (Tr. 466) The VE testified that such an individual could work as an industrial cleaner, cleaner II, and a dining room attendant. (Tr. 465-467)

The VE testified that the maximum level of acceptable absenteeism is six days per quarter. (Tr. 470) The VE also testified that if the previously described hypothetical person were late to work at least one day a week, and needed special supervision at least one and a half to two hours a day, she would be unemployable. (Tr.470-474)

### III. Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also

9

meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations; no climbing of ladders, ropes or scaffolds, no work around unprotected heights, hazards, no driving for work purposes/no commercial driving, and the claimant is limited to work which involves simple instructions, routine or repetitive tasks, and low stress work meaning no high production or rapid production quotas.

(Tr.20)

10

**V. Standard of Review**

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  See *Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales,* 402 U.S. 389 (1971).

**VI. Analysis**

Slocum alleges that the ALJ erred by failing to accord proper weight to the opinions of her treating physician and treating social worker.  She also alleges that the Appeals Council erred in failing to consider new and material evidence submitted by Slocum.  The Commissioner disputes these allegations.

***A. Treatment of Medical Opinions***

The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner.  *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983).  Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis,

11

prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-12 (6th Cir. 1988). Where there is insufficient objective data supporting the treating physician's opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the fact finder may choose to disregard the treating physician's opinion. *Landsaw v. Secretary of Health and Human Servs.*, 803 F.2d 211, 212 (6th Cir. 1986). The fact finder must, however, articulate a reason for not according the opinions of a treating physician controlling weight. *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987).

Even when a treating physician's opinion is found not to be entitled to controlling weight, it is still entitled to deference:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *4.

When the adjudicator determines that the treating source's opinion is not entitled to controlling weight, he is required to articulate good reasons for the weight given to

the treating source's medical opinion. 20 C.F.R. §§ 404.1527(d) (2) and 416.927.

> [T]he ...decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *5.

### *1. Dr. Oliverio's Opinion*

The ALJ disregarded Dr. Oliverio's opinion because she found that, "it is not supported by the overall evidence in the record, including the claimant's own testimony." (Tr. 21) The ALJ noted that Dr. Oliverio opined Slocum could walk only one half of a city block, while Slocum testified that she could walk one half of a mile. (Tr. 21)[2] She also noted that prior to surgery, Slocum had no restrictions on walking or standing. (Tr. 18) Further, the ALJ noted that Slocum's condition had improved since surgery, and therefore did not constitute a severe impairment after November 2006. (Tr. 18)[3] Slocum's improvement is demonstrated by the fact that there is no evidence of treatment after her surgery, including no evidence that Dr. Oliverio saw

---

[2] Although the ALJ did not reference it in her opinion, Dr. Oliverio opined that Slocum could stand continuously for only 15 minutes, while Slocum testified that she could stand continuously for one half hour to 45 minutes. (Tr. 374, 455)

[3] At the hearing, Slocum concedes that tarsal tunnel syndrome is not a severe impairment, nor is it central to her case. When asked what severe impairments Slocum was alleging, her counsel responded as follows:
"Your Honor, I would refer you to our...brief, where we discuss the impairments to be the seizure disorder, major depression. I think she also has the tarsal tunnel syndrome .... I think that the primary concerns, for the purpose of today, are the seizure disorder and depression.... [A]gain, I think the primary problems that we're concerned with today are the seizure disorder and the depression. " (Tr. 443-444)

13

Slocum before completing the residual functional capacity assessment 10 months after her surgery.[4]

Slocum argues that the evidence cited by the ALJ is not sufficient to discredit Dr. Oliverio's entire opinion. However, Slocum fails to articulate which portions of Dr. Oliverio's opinion should have been credited, or how it would have affected the outcome of Slocum's claim. Moreover, Slocum fails to point to any objective medical evidence to support Dr. Oliverio's opinion, which consists solely of conclusory statements regarding Slocum's residual functional capacity. The issue of residual functional capacity is not, however, a medical determination, but a disability determination reserved for the Commissioner. *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) (The determination of disability is the prerogative of the Commissioner, not the treating physician.)

As the foregoing illustrates, Dr. Oliverio's opinion was contradicted by Slocum's testimony, and not supported by objective medical evidence. The ALJ properly weighed Dr. Oliverio's opinion, and sufficiently articulated the reasons for the weight she accorded it.

### 2. Social Worker Lukens' Opinion

Only acceptable medical sources can be considered treating sources whose medical opinions may be entitled to controlling weight. Social Security Ruling 06-03p, 2006 WL 2329939 *2  A licensed clinical social worker is not an acceptable medical

---

[4] In his residual functional capacity assessment, Dr. Oliverio opines that he treats Slocum every six months, but there is no evidence to support this statement. (Tr. 374)

14

source; and therefore, her opinion is not entitled to controlling weight. Social Security Ruling 06-03p, 2006 WL 2329939 *2 . However, opinions from "other" medical sources are, "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Social Security Regulation 06-03P, 2006 WL 2329939 *3  Additionally, while there is a distinction between what the ALJ, must consider, and what she must explain, the ALJ generally should explain the weight given to opinions from other medical sources. Social Security Regulation 06-03P, 2006 WL 2329939 *6.

In this case, the ALJ considered Lukens opinion, and explained the reasons for the weight she accorded it. Specifically, the ALJ found that Slocum met the paragraph A diagnostic criteria of Listing 12.04 (affective disorders) 20 C.F.R. Pt. 404, subpt. P, app.1 based, in part, on Lukens' diagnosis. (Tr. 19) Additionally, the ALJ specifically referenced Lukens' patient notes, and her February 2007 residual functional capacity assessment in support of her finding that Slocum did not meet the paragraph B diagnostic criteria of Listing 12.04[5]. (Tr. 19) Specifically, the ALJ found that while Lukens' residual functional capacity assessment did indicate some marked limitations with respect to Slocum's ability to work, the assessment could be disregarded because it contradicted Lukens' treatment notes in which she assigned Slocum a GAF score of

---

[5] Listing 12.04 paragraph B requires a finding of two of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence or pace; or (4) Repeated episodes of decomposition, each of extended duration.20 C.F.R. Pt. 404, subpt. P, app.1

58, indicating moderate, rather than marked limitations.[6]  (Tr. 19)  The ALJ further noted that Dr. Dunn opined in his psychological evaluation that Slocum did not have significant limitations in her ability to relate to others, or in her ability to maintain attention, concentration, persistence or pace.  He assigned her a functional GAF score of 65, and an overall GAF score of 62.[7]  Thus, Lukens residual functional capacity assessment is not only inconsistent with her own notes, but also with Dr. Dunn's evaluation.  Inconsistency with other evidence in the record is specifically enumerated as a basis for disregarding medical source opinion.  Social Security Regulation 06-03P, 2006 WL 2329939 *3.  Thus, the ALJ's evaluation of Lukens' residual functional capacity assessment was proper.

### B. Remand Under 42 U.S.C. § 405(g)(6)

Slocum argues that the Appeals Council erred by failing to consider, as new and material evidence, Lukens' December 3, 2007 mental residual functional capacity report.

---

[6]A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

[7]A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning.  A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

42 U.S.C. § 405(g)(6) provides in part:

> The court may ... at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

Pursuant thereto, a court can remand a case for consideration of new evidence only where there is a showing that the evidence is new and material and that there is good cause for the failure to include the evidence in the prior proceeding. *Casey v. Sec'y of Health and Human Servs.* 987 F.2d 1230, 1233 ( 6th Cir. 1993). Evidence is considered new if it was, "not in existence or available to the claimant at the time of the administrative hearing." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990). Evidence is considered material when there is a reasonable probability that the ALJ would have reached a different decision if the evidence had been presented. *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990); *Sizemore v. Sec'y of Health and Human Servs.,* 865 F.2d 709, 711-712 (6th Cir. 1988). The party seeking remand must demonstrate good cause for failing to obtain the evidence prior to the hearing. *Cotton v. Sec'y of Health and Human Servs.,* 2 F.3d 692, 695 (6th Cir. 1993) To demonstrate good cause the party seeking remand must provide a valid reason for failing to obtain the evidence prior to hearing. *Oliver v. Sec'y of Health and Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986) Finally, the party seeking the remand has the burden of demonstrating that the remand is appropriate. *Willis v. Sec'y of Health and Human Servs.,* 727 F.2d 551, 554 (6th Cir. 1984)

Although the RFC is dated December 3, 2007 (one month after the ALJ's decision), Slocum has failed to establish that it is new evidence within the meaning of

42 U.S.C. § 405(g)(6). A report written after the close of a hearing is not new if the evidence within the report existed prior to the hearing. *See Jens v. Barnhart,* 347 F. 3d 209, 214 (7th Cir. 2003) ("Although the report had not yet been written at the time of the ALJ's decision, the information summarized in the report had long been in existence ... and thus does not meet the newness requirement of § 405(g).")

Slocum argues that the December 3, 2007 report is intended to supplement Lukens' earlier report. However, the December 3, 2007 report does not indicate the period of time to which it refers. Thus, Slocum has not established that the information contained in the report did not exist before the record in this case was closed. Additionally, Slocum has failed to explain why she could not obtain the report until nine months after the record was closed. Slocum bears the burden of proving the newness of the evidence, and has failed to do so.

Even if the evidence contained in Lukens' report were new, it is not material. Slocum fails to fully articulate why she is submitting the December 3, 2007 report. However, it appears that her purpose is to show that her condition has worsened.[8] A deterioration of Slocum's condition, however, is not material, and therefore does not warrant remand. *See Wyatt v. Sec'y of Health and Human Servs.,* 974 F. 2d 680, 685 (6th Cir. 1992) ("Evidence of subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.")(citations omitted); *Sizemore v. Sec'y of*

---

[8] On February 6, 2007 Lukens opined that out of 20 work-related mental activities, Slocum was mildly limited in four, moderately limited in 14, and markedly limited in two. (Tr. 363-364) Ten months later, on December 3, 2007, Lukens opined that of the same 20 work-related mental activities, Slocum was moderately limited in seven, and markedly limited in 13. (Tr. 388-389) Thus, the December 3, 2007 report shows a deterioration of Slocum's condition.

*Health and Human Servs.,* 865 F.2d 709, 712 (6th Cir. 1988). ("Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition.") (citations omitted) *See also Oliver v. Sec'y of Health and Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986) If Slocum's condition has in fact deteriorated, the appropriate remedy is to file a new claim for benefits.

Based on the foregoing, Slocum has failed to establish that remand is appropriate.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Nancy A. Vecchiarelli<br>
U.S. Magistrate Judge

Date: January 30, 2009